**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, CHIEF JUDGE**

Civil Case No. 03-cv-00299-LTB-PAC

CHERYL ANN ABOLD,

       Plaintiff,

v.

CITY OF BLACK HAWK, a public entity existing under the laws of the State of Colorado;
SCOTT A. WATSON, individually, and in his capacity as a Black Hawk City Police Officer;
SAMUEL LEE AYRES, individually, and in his capacity as a Black Hawk City Police Officer;
and
ARTHUR M. HUTCHISON, individually,

       Defendants.

_____

**ORDER**
_____

      This matter is before me on: 1) Defendants' Motion to Strike Expert Witness, filed on March 11, 2005, in which Defendants City of Black Hawk and Scott Watson, who are joined by Defendant Samuel Ayres, seek to preclude the testimony of Plaintiff Cheryl Abold's Expert Witness, John L. Sullivan; and 2) Defendants' Motion to Strike Plaintiff's Expert Witness Daniel Griffin, M.D., filed on March 25, 2005.  Pursuant to my order dated July 18, 2005, I hold in abeyance any rulings on these motions pertaining to Defendant Arthur M.  Hutchison.  After consideration of the motions, all related pleadings, and the testimony and argument presented at the hearings on June 23 and 24, 2005, I GRANT IN PART AND DENY IN PART the Motion to Strike Mr. Sullivan as an Expert Witness, and I GRANT the Motion to Strike Dr. Griffin as an Expert Witness.

## I. BACKGROUND

Plaintiff is suing the City of Black Hawk and its police officers (Defendants Watson and Ayres) pursuant to 42 U.S.C. §1983 for personal injuries she received following the alleged unreasonable seizure and use of excessive force by the police against her after a night of drinking and gambling in the City of Black Hawk in the early morning hours of February 16, 2002. Her claims of §1983 liability against the City of Black Hawk are based on failure to train and supervise. She also claims that the City of Black Hawk has adopted a policy of arresting and seizing casino patrons for alleged intoxication without reasonable or probable cause to believe that they constitute a clear danger to either themselves or others in violation of the Fourth Amendment. Finally, she asserts state law claims for: use of excessive force by a police officer; assault and battery; reckless endangerment; false imprisonment; and common law negligence.

## II. LAW

### Fed. R. Evid. 702 Standard

Under Fed. R. Evid. 104(a), I determine the admissibility of expert testimony as a preliminary matter. *United States v. Turner*, 285 F.3d 909, 912-13 (10th Cir. 2002). First, I must decide whether the proffered expert witness is qualified, and next whether the proffered opinions are both relevant and reliable. Fed. R. Evid. 104(a), 702; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593, 113 S. Ct. 2786, 125 L.Ed.2d. 469 (1993). The proponent of the evidence bears the burden of establishing that her proffered expert's testimony is admissible. *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001). To satisfy this burden, the proponent of the expert testimony must make a *prima facie* showing that:

1) the witness is qualified to render the proffered opinions;
2) the opinions are based upon scientifically valid reasoning or methodology; and
3) the opinions apply to the facts at issue in the case.

Fed. R. Evid. 702; *see also Daubert v. Merrell Dow*, *supra,* 509 U.S. at 593.  The law "grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 142, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

"[T]here is no more certain test for determining when experts may be used than the common[-]sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." *Corneveaux v. CUNA Mut. Ins. Group*, 76 F.3d 1498, 1504 (10th Cir. 1996) (quoting Fed. R. Evid. 702 Advisory Committee's note).  I note, however, that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence. . . . These conventional devices, rather than wholesale exclusion under an uncompromising general acceptance test, are the appropriate safeguards where the basis of scientific testimony meets the standards of Rule 702." *Daubert v. Merrell Dow*, *supra,* 509 U.S. at 596.

**Expert Qualification**

An expert witness must be qualified to give expert opinions for those opinions to be admissible; scientific, technical and other specialized knowledge must form the basis of an expert's testimony.  Fed. R. Evid. 702.  I determine whether a witness is qualified by "comparing the area in which the witness has superior knowledge, skill, experience, or education with the

subject matter of the witness's testimony." *Carroll v. Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir. 1990). I make this determination before I assess whether an expert witness' opinions are reliable and relevant. *Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1244 (10th Cir. 2000).

**Relevance and Reliability of Expert Opinions**

In assessing the reliability of a proffered opinion, I may consider, *inter alia*:

(1) whether the opinion is susceptible to testing and has been subjected to such testing;

(2) whether the opinion has been subjected to peer review;

(3) whether there is a known or potential rate of error associated with the methodology used and whether there are standards controlling the technique's operation; and

(4) whether the theory has been accepted in the scientific community.

*Hollander v. Sandoz Pharmaceuticals Corp.*, 289 F.3d 1193, 1205 (10th Cir. 2002).

Admissible expert testimony must be based on "actual knowledge and not 'subjective belief or unsupported speculation.'" *Id.* (*quoting Daubert v. Merrell Dow*, *supra,* 509 U.S. at 590). It must be supported by "appropriate validation– i.e. 'good grounds,' based on what is known. . . . The [proponent] need not prove that the expert is indisputably correct or that the expert's theory is 'generally accepted' in the scientific community. Instead, the [proponent] must show that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements." *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999). "As long as a logical basis exists for an expert's opinion . . . the weakness in the underpinnings of the opinion . . . go[es] to the weight and not the admissibility of the testimony." *Jones v. Otis Elevator Co.*, 861 F.2d 655, 663 (11th Cir. 1988).

Although I may deem an expert qualified and his opinions reliable, his opinions must still be relevant.  That requires me to consider "whether expert testimony . . . is sufficiently tied to the facts of the case [so] it will aid the jury in resolving a factual dispute."  *Daubert v. Merrell Dow*, *supra,* 509 U.S. at 591.  The Tenth Circuit routinely excludes expert testimony because it is speculative.  *See e.g., Jetcraft Corp. v. Flight Safety Int'l*, 16 F.3d 362, 366 (10th Cir. 1993).

**Applicable 10th Circuit Law**

Finally, I am bound to comply with the Tenth Circuit's ruling in *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1229 (10th Cir. 2003).  There, after concluding that the district court did not adequately perform its gatekeeping function, the Tenth Circuit instructed the trial court on remand that:

> We would be remiss not to indicate our concern that the district court vigilantly make detailed findings to fulfill the gatekeeper role crafted in *Daubert*. . . . [I]t is essential that by specific findings of record the trial court assures the expert testimony offered by both sides is relevant and reliable, and the particular opinion is based on valid reasoning and reliable methodology.

*Id.* at 1226.

### III. MOTION TO STRIKE EXPERT SULLIVAN

Defendants assert that the opinions of Mr. Sullivan, a "police practices expert" for Plaintiff, are unreliable and, thus, he should be stricken as an expert witness in this case. Plaintiff has only endorsed Mr. Sullivan as a police liability expert in support of her § 1983 claims that she was illegally arrested or detained without probable cause, and that excessive force was used by the Defendant police officers against her.

**Sullivan's Opinion re: City of Black Hawk**

I first address Defendants' challenge to Mr. Sullivan's opinion in his expert report that the City of Black Hawk is culpable in this case for failure to adequately train the Defendant police officers "in Laws of Arrest, Colorado's Protective Custody statute, and Physical Arrest Techniques" and for its failure to adequately supervise the Defendant police officers "thus allowing their actions against members of the public to be arbitrary and unlawful by arresting without probable cause, illegally detaining and the use of excessive force." Defendants argue that these conclusions are based on insufficient facts.

In the Final Pretrial Order, filed on March 30, 2005, Plaintiff did not indicate that Mr. Sullivan would be providing his opinion as to the liability of the City of Black Hawk regarding the training and/or supervision of the Defendant police officers. Although Sullivan's report clearly opines on the matter, Plaintiff endorses him only to provide expert testimony as to appropriate police procedures related to the Defendant police officers' conduct. Pursuant to Fed. R. Civ. P. 16(e), the pretrial order controls the subsequent course of the action, and is binding upon the parties. Although it is within my sound discretion to allow expert testimony of witnesses not described or listed in the pretrial order to prevent manifest injustice, *see e.g. Moss v. Feldmeyer* 979 F.2d 1454, 1458 -1459 (10th Cir. 1992)(citation omitted), Plaintiff has neither requested that I do so, nor provided any showing of manifest injustice.

Most importantly, with regard to Mr. Sullivan's conclusion that the City of Black Hawk is culpable for failure to adequately train the officers, Mr. Sullivan's sole basis for his conclusion was that "[t]he lack of training is illustrated in the officers['] arbitrary and unlawful arrest, detention and use of excessive force cited in this case." This logic is flawed. If the

officers strayed from constitutional parameters on February 16, 2002, it does not necessarily follow that they have been improperly trained.  Although Sullivan's report indicates that he reviewed Black Hawk Police Department training files and the training files specific to the officers, at his deposition Sullivan testified that his opinion that the officers were not provided sufficient training was based upon their conduct in this matter.  With regard to his conclusion of insufficient training related to determining probable cause, Sullivan indicated that he also relied upon an internal affairs file in which one of the Defendant officers had been reprimanded in the past for an improper *search* without probable cause.  However, his continued deposition testimony reveals that he either did not consider or was not provided comprehensive information regarding the amount and quality of training the officers received.  It is clear from the record that Mr. Sullivan was not provided with enough information to assess the quantity or quality of the training provided to the police officers involved.   His related opinion regarding the City of Black Hawk's lack of supervision of the Defendant police officers is likewise deficient.

Therefore, because his opinion regarding the liability of the City of Black Hawk for failure to train and supervise is essentially based solely on the alleged conduct of the officers during the incident at issue here, such opinions are unreliable because they are not based on sufficient facts or data.  Sullivan's proposed expert opinion as to the liability of the City of Black Hawk for failure to train and supervise is, in essence, a subjective belief consisting of unsupported speculation that is not tied to the facts of the case.  Such opinion would not aid the jury in its determination and is not grounded upon a reliable basis.  *See Gomez v. Martin Marietta Corp.,* 50 F.3d 1511, 1519 (10th Cir. 1995)(although absolute certainty is not required,

an "expert opinion must be based on facts which enable him to express a reasonably accurate

conclusion as opposed to conjecture or speculation").  And, the same deficiencies underlie any

opinion concerning municipal custom or policy.

As a result, I grant Defendants' motion to strike Mr.  Sullivan's expert testimony as it

relates to the City of Black Hawk's alleged failure to train and supervise the Defendant officers

and as it may relate to any municipal policy or custom.

**Sullivan's Opinion re: Police Officers' Actions**

Defendants also challenge the reliability of Mr. Sullivan's opinions regarding the actions

of the individual Defendant police officers.  Specifically, Defendants challenge his opinion –

based on local Nevada state law –  that a police officer may make a misdemeanor arrest for

disorderly conduct only when:  1) the misdemeanor crime occurred in the officer's presence; or

2) it followed a citizens arrest by the person who observed the crime being committed.

Defendants maintain that because this assertion is incorrect – in that the applicable Federal and

Colorado law provides that an officer may make a misdemeanor arrest based on probable cause,

*see* C.R.S. §16-3-102 and *Welsh v. Wisconsin*, 466 U.S. 740, 756, 104 S.Ct. 2091, 80 L.Ed. 2d

732 (1984)("the requirement that a misdemeanor must have occurred in the officer's presence to

justify a warrantless arrest is not grounded in the Fourth Amendment") – Sullivan's lack of

understanding of the law of probable cause renders his expert opinion as a police liability expert

unreliable.  Defendants argue that his testimony does not have "a reliable basis in the knowledge

and experience of the relevant discipline," *U.S. v. Velarde,*  214 F.3d 1204, 1208 (10th Cir.

2000)(*quoting Daubert v. Merrell Dow, supra*, 509 U.S. at 592) so his opinion that the officers

violated Plaintiff's constitutional rights should be stricken in its entirety under Fed. R. Evid. 702.

*See also Kumho Tire Co., Ltd. v. Carmichael, supra*, 526 U.S. at 152 (requiring that an expert

employ the same level of "intellectual rigor that characterizes that practice of an expert in the

relevant field").

In response, Plaintiff does not dispute that Sullivan's understanding of the law of

probable cause as it pertains to misdemeanor arrests is incorrect.  Plaintiff contends, however,

that his opinion regarding her alleged illegal seizure is not based on his incorrect assumption

concerning the probable cause requirement for a misdemeanor arrest.  Instead, Plaintiff argues

that Sullivan's opinion of unreasonable seizure for lack of probable cause is based on his opinion

that:  1) Plaintiff had not committed a crime; and 2) she was not a danger to herself or others

justifying emergency seizure.  As such, Plaintiff contends that Sullivan's admittedly incorrect

legal conclusion regarding the appropriate standard for misdemeanor arrest is not relevant and in

no way effects his relevant opinions here.

With regard to Plaintiff's claim of illegal seizure, Sullivan reviewed the events of the

evening recorded on the casino surveillance video, and opined that the elapsed time of one

minute and 46 seconds between when the police officer approached Plaintiff and her companion

was "not adequate time to conduct even a cursory investigation into the merits of the pending

arrest" and "[t]here is no evidence from the surveillance tape that neither Ms. ABOLD nor Mr.

BOVE were a danger to themselves or others."  When addressing Officer Ayres' claim that he

thought *Mr. Bove* could be arrested for disorderly conduct, Sullivan applied the incorrect

standard for misdemeanor arrest to conclude that Ayres did not have a legal basis to arrest Mr.

Bove for the misdemeanor crime of disorderly conduct.  Plaintiff maintains that although

Sullivan's opinion regarding probable cause for misdemeanor arrest may be wrong, it is not relevant to his opinion related to *her* seizure which is at issue here.

I agree that Mr. Sullivan's opinion regarding the probable cause assessment of the officers when arresting for a misdemeanor is not relevant.  As all the parties concede, Sullivan's legal determination and resulting conclusion regarding Officer Ayres' claim that he thought he could arrest Mr. Bove for disorderly conduct was erroneous.   Thus, it is clear that Sullivan cannot be allowed to give expert testimony regarding the officers' probable cause assessment related to any alleged misdemeanor arrest of either Mr. Bove or Plaintiff.  *See* Fed. R. Evid.  402 (regarding relevancy of evidence); Fed. R. Evid.  403 (regarding evidence that would confuse the jury).  But it is clear from my separate order entered upon Defendants' motions for summary judgment and to dismiss that what is now relevant is Plaintiff's seizure under Colorado's protective custody statute, C.R.S. § 25-1-310(1), and the amount of force used to effectuate that seizure.  The pivotal inquiry then is whether Sullivan's admittedly incorrect understanding of probable cause for a misdemeanor arrest is so fundamental to the relevant discipline that it taints his entire opinion as to the constitutionality of the Defendant police officers' actions and his conclusions as to illegal seizure and excessive force against Plaintiff.

I first note that although Defendants attempt to characterize their argument as a challenge to Mr.  Sullivan's qualifications, it is clear that the issue is one of reliability.  Defendants specifically assert that Sullivan's erroneous opinion "demonstrated that probable cause issued are apparently beyond his ken and render [all] his opinion as a proposed expert police officer unreliable under Fed. R. Evid. 702."   With regard to the determination of his qualifications, Defendants do not specifically challenge Mr.  Sullivan's ample experience-based expertise, and I

10

conclude that his misunderstanding regarding the law of probable cause for misdemeanor arrest does not directly pertain to his qualifications.  Additionally, Mr. Sullivan's error is not an underlying premise for his relevant conclusions regarding this case.  Rather, it relates solely to his opinion regarding Officer Ayres' claim that he thought he could arrest Mr. Bove for the misdemeanor crime of disorderly conduct.  The error is not related  to Sullivan's opinions regarding the Defendant police officers' action toward Plaintiff.  As discussed above, Sullivan's opinion regarding the probable cause needed for a misdemeanor arrest is irrelevant to the protective custody and excessive force issues here and will not be presented to the jury.

Defendant's argument is that the error is related to Sullivan's reliability in that it undermines his expertise in the "relevant discipline."  However, it is clear from the record that Sullivan's misunderstanding is based on his knowledge of the law from Nevada, which Defendants do not contend is incorrect for that jurisdiction.  While Sullivan's legal error related to the necessary probable cause for misdemeanor arrests in Colorado may be admissible for the purposes of questioning his credibility and opinions on cross-examination, it does not render his opinion on the validity of Plaintiff's seizure under Colorado's protective custody statute and the force employed in that seizure so unreliable as to preclude his all his expert testimony and unrelated opinions under Fed. R. Evid. 702.   *See Daubert v. Merrell Dow*, *supra,* 509 U.S. at 596; *Orth v. Emerson Elec. Co., White-Rodgers Div.*, 980 F.2d 632, 637 (10th Cir.1992); *Jones v. Otis Elevator, supra,* 861 F.2d at 663 ("the weaknesses in the underpinnings of the opinion[ ] go to the weight and not the admissibility of the testimony").

Therefore, I conclude as follows.  Mr.  Sullivan's opinions regarding the City of Black Hawk's failure to train and/or supervise the Defendant police officers, and on municipal custom

or policy, are inadmissible because Plaintiff's failure to endorse such testimony and that such testimony would be unreliable as unsupported speculation.  Mr. Sullivan's admittedly erroneous interpretation of the law as it relates to probable cause for a misdemeanor arrest, and any of his conclusions derived therefrom, are likewise inadmissible as irrelevant.   However, to the extent his opinions relate to Plaintiff's excessive force and illegal seizure claims by the Defendant police officers, and do not rest on his incorrect assumption regarding probable cause, they are admissible.  Finally, I note emphatically that in no event would Sullivan be allowed to state an opinion on the ultimate issue for the jury – the liability of any Defendant.  Testimony which articulates and applies the relevant law is not permitted as it "circumvents the jury's decision-making function by telling it how to decide the case."  *U.S. v. Oles*, 994 F.2d 1519,1523 (10th Cir. 1993)(*citing Specht v. Jensen,* 853 F.2d 805, 808 (10th Cir.1988)).

## II. MOTION TO STRIKE EXPERT DR. GRIFFIN

In this motion to strike, Defendants assert that the opinions of Dr. Daniel Griffin, M.D. – Plaintiff's designated expert regarding the diagnosis and causation of her alleged personal injuries – are unreliable and, as a result, he should be stricken as an expert witness in this case. Dr. Griffin is a physician board certified in internal medicine, but not a specialist in the field of gastroenterology.

On December 26, 2002, over ten months after the incident at issue here, Plaintiff went to the emergency room complaining of stomach pains.  It is undisputed that the blood supply to a portion of Plaintiff's colon (specifically, a portion of the "distal transverse colon extending into the splenic flexure") was compromised, resulting in ischemia – which is defined as low blood

flow resulting in hypoxia, or decreased oxygen supply.  A portion of Plaintiff's colon became

necrotic from lack of oxygen necessitating its surgical removal on December 27, 2002.

Dr. Griffin subsequently treated Plaintiff for the purpose of providing a post-operation

consultation to her surgeon.  It was, and continues to be, Dr. Griffin's opinion that: 1) Plaintiff

suffered from "chronic abdominal pain secondary to ischemic colitis;" and that 2) the ischemic

colitis was due to the trauma she sustained during the incident at issue here.

Defendants assert Dr. Griffin's opinions are unreliable because: 1) his diagnosis is based

on unreliable and insufficient information from Plaintiff; 2) his diagnostic methodology is

unreliable in that he disregards objective medical evidence that Plaintiff's ischemic colitis was

an acute condition; 3) his opinion regarding the causation is not statistically reliable; 4) he relies

on irrelevant articles that do not provide support for his position; and 5) there is no literature or

scientific study supporting Dr. Griffin's opinion of causation.

As an initial matter, I note that Defendants take issue with Dr. Griffin's new affidavit that

was attached to Plaintiff's Response ("Opposition") to the Motion to Strike.  They contend that

the attached affidavit identifies additional medical literature supporting his diagnosis and

causation opinions not previously disclosed.  Defendants ask me to disregard this additional

literature – and Dr. Griffin's new opinions based thereon – pursuant to Fed. R. Civ. P.

37(c)(1)("[a] party that without substantial justification fails to disclose information required by

Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is

not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a

motion any witness or information not so disclosed").  Defendants argue that the new affidavit

fails to meet the discovery disclosure requirements of Fed. R. Civ. P. 26(a)(2)(requiring

disclosure the expert's report containing "a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions" which "shall be made at the times and in the sequence directed by the court"). *See also* Fed. R. Civ. P. 26(e)(1)(providing a duty to supplement for experts "both to information contained in the report and to information provided through a deposition of the expert;"and such "additions or other changes to this information shall be disclosed by the time the party's disclosures under Rule 26(a)(3) are due").

The determination of whether a Rule 26(a) violation is "substantially justified" or "harmless" is entrusted to my broad discretion. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 953 (10th Cir. 2002). The Tenth Circuit has held that the following factors should guide that determination: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Id. (quoting Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir.1999)).

The affidavit at issue is dated April 25, 2005. The Final Pretrial Order in this case which indicates that all discovery has been completed was signed by Magistrate Judge Coan on March 30, 2005. However, I conclude that Plaintiff's Rule 26(a) violation is harmless under the circumstances here. Although this new affidavit not only clarifies Dr. Griffin's earlier opinion but also sets forth additional opinions and findings, I find that there is little prejudice or surprise to Defendants because the clarified and new opinions of Dr. Griffin were extensively tested on

cross examination and addressed by Defendants' expert at the hearing.  Furthermore, although such conduct should not be encouraged, there is no evidence to support Plaintiff's bad faith or willfulness in the violation.   Hence, I deny Defendants' request to disregard this Dr. Griffin's new affidavit pursuant to Fed. R. Civ. P. 37(c)(1) and Fed. R. Civ. P. 26(a)(2).

**Dr.  Griffin's Opinion re: Plaintiff's Diagnosis**

Defendants first challenge Dr. Griffin's diagnostic opinion that Plaintiff suffered from chronic, as opposed to acute, ischemic colitis.  It is uncontested that Plaintiff suffered an acute event of ischemia in December of 2002 that required surgery.  It is Dr. Griffin's opinion that Plaintiff had been suffering from chronic ischemia of her colon for the previous ten months – from the February 16, 2002 incident at issue here until the December 26, 2002 event.  Dr. Griffin's differential diagnosis is based primarily on Plaintiff's report of chronic stomach pain during the ten month period prior to surgery and various related misdiagnoses.

Defendants first contend that Dr. Griffin's diagnosis is unreliable because it is solely based on Plaintiff's subjective report to him of chronic stomach pain during the ten months between the incident at issue and her surgery, which differ significantly from the histories she had given to other health care professionals.  Defendants refer me to Plaintiff's lack of complaints of stomach pain directly after the incident and during a follow up visit with her primary care physician, Dr. April Gray, on February 25, 2002.  They also point to a report of Plaintiff's emergency room visit in July 26, 2002, over five months later, in which Plaintiff reports abdominal pain unlike anything she had experienced in the past, and a subsequent November 28, 2002 doctor visit in which she again reported abdominal pain over the past two week period unlike any pain she had in the past.

At his deposition, Dr. Griffin conceded that such complaints were not consistent with his diagnosis of chronic ischemic colitis.  However, in his new affidavit and at the hearing, Dr. Griffin testified that it was his opinion that Plaintiff had a clinical course of several isolated but recurrent episodes of stomach pain during the ten-month period.  Dr. Griffin defined these episodes as "mild ischemic episodes of a short duration" that he now asserted were consistent with his diagnosis of chronic ischemia.  He also noted that Plaintiff's medical records and history revealed no complaints of stomach pain prior to the incident of assault alleged here, and that she has had no problem of stomach pain after her surgeries.

Defendants also assert that Dr. Griffin's methodology and resulting diagnosis are unreliable because they are contrary to and unsupported by the objective medical evidence.  Specifically, they argue that Dr. Griffin's diagnosis ignores the fact that there was no bruising to Plaintiff's abdomen after the alleged assault.  Defendants further assert that the pathology reports of the removed tissue from Plaintiff's colon reveals acute ischemic colitis with no pathologic indication of a chronic condition.

The initial pathology reports analyzing the tissue from Plaintiff's December 2002 surgery and follow-up surgery in January of 2003, were apparently not definitive as to diagnosis for the purpose of treatment and, thus, were subject to a second opinion by Dr. Thomas Colby at the Mayo Clinic.  Dr.  Colby concluded that the pathology "looks like acute ischemic colitis" and that it showed "features of acute ischemic colitis."  The pathology opinion did not note any evidence of chronic colitis.

Defendants contend that a chronic form of the disease should have been clearly definable on the pathologic specimen and, as a result, the lack of any such evidence indicates no chronic

condition.  At the hearing on this matter Defendants' expert, Dr. Joel S. Levine, M.D., a physician board certified in internal medicine and in the more specialized field of gastroenterology, testified that a chronic condition would result in scarring/fibrosis or stricture/narrowing of the relevant vascular system that could not be overlooked in the pathology.  Because chronic ischemic colitis is a repetitive, ongoing ischemic event, Dr. Levine testified that it would cause changes in the bowel that would be apparent in the pathology.  He further noted that the surgical reports do not indicate any injury that would cause such vascular disease, resulting in a chronic condition.  It should have been "obvious."  He testified that the pathology reports, which indicate "features of acute" and "relatively acute" ischemia, are only qualified as to causation of the ischemia – they do not reveal a chance or possibility of a chronic condition.  It was his opinion that the pathology was "definitive" of acute ischemia, and that an opinion of chronic ischemia in the pathology would also, given its nature, been definitive.  As such, it is his opinion that Plaintiff's diagnosis was acute colonic ischemia, which he defines as an insult or injury, within a short period of time, resulting in a diminution of oxygen delivery to a portion of her colon.

Dr. Griffin, in contrast, testified that while the reports do not discuss evidence of a chronic condition, presumably in the form of vasculitis, the pathology reports also do not indicate that there was *not* any such evidence.  Instead, he contends that the pathology report concluded that was insufficient vasculature to make a determination one way or the other.

The parties concede, and I agree, that Dr. Griffin is qualified in the field of internal medicine and that his opinions in this matter are relevant.  The appropriate inquiry then is whether his opinion regarding diagnosis is reliable; specifically, whether his diagnosis of

chronic, as opposed to acute, ischemic colitis is based on medically reliable and scientifically valid methodology.

First, Dr. Griffin's diagnosis is significantly undermined because it is heavily based on Plaintiff's subject report of her case history inconsistent with the history she gave to other health care providers.  There is evidence in the medical records that Plaintiff was not always forthcoming to her medical providers when reporting about her use of drugs, cigarettes and alcohol.  In addition, it was Dr. Levine's testimony that although Plaintiff presented with some symptoms of colonic ischemia during the ten months following the incident at issue here, it was his opinion that Plaintiff's description of her pain during that time – as constant with several episodes of worsening pain – was not consistent with the symptoms of chronic ischemic colitis which are  generally nonexistent or very minor.   Although Dr. Griffin disagrees, in light of the subjective nature of the complaints Plaintiff's clinical presentation during the ten month period following the alleged trauma was not entirely consistent with chronic ischemia.

Dr. Griffin's opinion has not been subject to peer review.  In fact, Dr. Levine could not find a single reported case study of a blunt trauma causing chronic colonic ischemia which would result, many months later, in an acute ischemic event, particularly when, as here, there is no definitive objective medical evidence of a chronic ischemic condition.  Dr. Griffin testified that there are a few articles that report cases of blunt trauma and incidences of intestinal ischemia delayed for days, months and even years.  Significantly, the literature Dr. Griffin relies upon does not pertain specifically to ischemia of the *colon*.

Although the doctors disagree as to whether some of the relevant articles relate to a different disease – the small bowel as opposed to the colon and based on their disagreement

related to the use of the terminology "mesenteric ischemia" – it clear that Dr. Griffin is

extrapolating his conclusions from a myriad of tangentially related case studies.  For example, he

often refers to literature that discusses ischemia caused by thrombosis in the mesenteric vascular

(clotting) which all parties agree was not present here.  There is not one case study reporting a

past traumatic event resulting in a delayed acute ischemic event, or even that chronic colitis

could, over time, result in an acute ischemic event.  Dr.  Griffin admitted that of the literature he

relies upon, none present a case study with the clinical features of Plaintiff's situation.  Although

there were a few trauma case studies in which an ischemic event presented a few weeks later,

they were related to a perforation of the colon that had sealed off.  That was not the case here.

Dr. Griffin testified that of the approximately 100 or so cases of ischemic colitis he has

diagnosed, this is the only case he has diagnosed as chronic in nature.  I conclude that the

medical literature does not support Dr.  Griffin's diagnosis here.  *See General Elec. Co. v.

Joiner,* 522 U.S. 136, 145-46, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997)(ruling that it is within the

district court's discretion "to conclude that the studies upon which the experts relied were not

sufficient, whether individually or in combination, to support their conclusions").

Finally, and most importantly, Dr. Griffin's diagnosis is not consistent with the objective

medical evidence.  He concedes that Plaintiff's lack of bruising and lack of abdominal pain

directly after the alleged assault is inconsistent with his diagnosis of a chronic condition caused

by the incident.  The surgical and pathology reports, although not entirely obvious to a

layperson, are clear in the fact that no indications of a chronic condition, which should have been

noted, were observed by the surgeon or the doctors reporting on the pathology.  The ultimate

conclusion of the pathology was an acute condition.  I am not convinced by Dr. Griffin's

speculation that evidence of a chronic condition may have been observable if more of the

vasculature would have been removed as part of the specimen.  As a result, Dr. Griffin's opinion

here is based solely on a differential diagnosis which the Tenth Circuit has determined is most useful when "the party relying on the diagnosis has offered independently reliable evidence" in support of the opinion.  *See Goebel v. Denver and Rio Grande Western R. Co.*, 346 F.3d 987, 999 (10th Cir. 2003) (*quoting Hollander v. Sandoz Pharms. Corp.*, 289 F.3d 1193, 1210-11 (10th Cir.2002)).  *See also Norris v. Baxter Healthcare Corp.,* 397 F.3d 878, 885 (10th Cir. 2005)(finding that the proposed expert's "reliance on differential diagnosis without supporting epidemiological evidence is misplaced and demonstrates the unreliable nature of the testimony").  Dr. Griffin proffers no "independently reliable evidence" in support of his differential diagnosis.

Here, Dr. Griffin's conclusions regarding his diagnosis of chronic ischemic colitis are at best abstractly plausible.  They do not follow the available data; specifically Plaintiff's history during the ten month period following the event at issue; the inapplicable medical literature and lack of reported case studies; and the contrary pathology and the objective evidence in the medical record.   The relationship between Dr. Griffin's conclusions and the information available in this case is speculative, tenuous at best, and severely lacking in sufficient support.  As such, there is simply too great an analytical gap between the data and the opinion proffered.  *Id; see also General Elec. Co. v. Joiner, supra,* 522 U.S. at 146.  As a result, Dr. Griffin's opinion regarding diagnosis is unreliable under Fed. R. Evid. 702 and *Daubert v. Merrell Dow, supra,* and is thus inadmissible at trial.

**Dr. Griffin's Opinion re: Causation**

Because I have concluded that Dr. Griffin's diagnosis of chronic ischemic colitis is unreliable, Dr. Griffin's related opinion that the alleged trauma Plaintiff incurred during the incident at issue here caused the acute ischemic event, and the related surgery, is unreliable because the chronic diagnosis is a necessary premise underling his causation conclusion. His methodology is flawed because it appears to me that Dr. Griffin's diagnosis of a chronic condition was reached by a reverse analysis from his opinion on causation. To that end, I note that Dr. Griffin research into the medical literature was done *after* his opinion as to diagnosis and causation. And, it is significant that much of the literature was compiled by Plaintiff's counsel, not Dr. Griffin, in defense of this motion. *See Mitchell v. Gencorp Inc., supra,* 165 F.3d at 783 (criticizing experts that "reached their ultimate conclusions before studying the available literature").

ACCORDINGLY, for the foregoing reasons:

1) I GRANT IN PART AND DENY IN PART Defendants' Motion to Strike Expert Witness John L. Sullivan [170]; and

2) I GRANT  Defendants' Motion to Strike Expert Witness Daniel Griffin, M.D. [178].

Dated: July ___18___, 2005, in Denver, Colorado.

BY THE COURT:


__s/Lewis T. Babcock_____
LEWIS T. BABCOCK, CHIEF JUDGE