**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, CHIEF JUDGE**

Civil Case No. 03-cv-00299-LTB-PAC

CHERYL ANN ABOLD,

        Plaintiff,

v.

CITY OF BLACK HAWK, a public entity existing under the laws of the State of Colorado;
SCOTT A. WATSON, individually, and in his capacity as a Black Hawk City Police Officer;
SAMUEL LEE AYRES, individually, and in his capacity as a Black Hawk City Police Officer;
and
ARTHUR M. HUTCHISON, individually,

        Defendants.

_____

# ORDER
_____

This matter is before me on: 1) Defendant Samuel L. Ayres' Motion for Partial Summary

Judgment; and 2) Defendants City of Black Hawk and Scott A. Watson's Combined Motion for

Summary Judgment and Motion to Dismiss.  Pursuant to my order dated July 18, 2005, I hold in

abeyance any rulings on these motions pertaining to Defendant Arthur M.  Hutchison.  After

consideration of the motions, all related pleadings, and the argument presented at the hearing on

June 24, 2005, both motions are GRANTED IN PART and DENIED IN PART.

## I. Underlying Facts

Although the facts are vigorously disputed by the parties, for the purposes of this order

the facts in the light most favorable to Plaintiff are as follows.  On February 15, 2002, Plaintiff,

Cheryl Ann Abold, and her companion, Rick Bove, spent the day drinking and gambling at the

casinos in the City of Black Hawk, Colorado.  At approximately 11:30 p.m., they arrived at the

Mardi Gras Casino.  They were at a table at the second floor gaming area when a Mardi Gras waitress served them two free beers.   Plaintiff and Mr. Bove were winning but were not tipping their dealer which, they assert, resulted in the dealer becoming frustrated and hostile.

After about thirty minutes, a casino security supervisor, Tom Spitzlberger, approached Mr. Bove, and indicated that he could no longer gamble because he was drunk, and that all Spitzlberger needed to do was make a telephone call and Mr. Bove would "spend the night in jail."  After they spoke for several minutes, Mr. Bove agreed to leave the table and cash out his winnings.  Mr. Bove then told Plaintiff that they were leaving.  Spitzlberger did not speak with Plaintiff, and Mr. Bove contends that he never specifically asked them to leave the casino.

Plaintiff and Mr. Bove left the second-floor gaming area when they decided to have some pizza on the lower floor of the casino. After they ate, Mr. Bove began to play a nearby slot machine, while Plaintiff watched, when a manager for the casino approached them and said to Mr. Bove that he thought "you were going to your room" or that "you were through playing." Mr. Bove responded that they were leaving.  After he collected his winnings from the slot machine, and as they were leaving the casino, Defendants Ayres and Watson, Black Hawk police officers, arrived in response to a call from casino management.

The officers spoke with Mr. Bove about his refusal to leave the casino.  Mr. Bove indicated that he and Plaintiff were on their way to their room at a hotel across the street. Ultimately, Mr. Bove was taken into custody and handcuffed without incident.  At that point Plaintiff told Officer Ayres that if they were taking Mr. Bove, "you need to take me" or "if he goes, I am going too."  Plaintiff then allowed Officer Ayres to handcuff her and take her into custody.  The parties dispute the reasons that Plaintiff and Mr. Bove were seized by the officers.

Plaintiff then informed Officer Ayres that he was hurting her by elevating her handcuffed arms due to a neck injury. As Officer Ayres escorted her across the street to the parked police cars, Plaintiff asked him for the third time to refrain from elevating her arms. Plaintiff then pulled her arms down to relieve the pressure on her neck, at which point Officer Ayres yelled at her to "stop resisting," picked her up in the air by the handcuffs and slammed her, stomach first, into the corner of his police car. He then picked her up by the handcuff chain and took her to the ground.

At that point the evidence indicates that Office Ayres pinned Plaintiff to the ground in a prone position with his knee on the middle of her back. When Plaintiff turned her head to avoid the pavement, another officer put his knee on her chin or jawline, pinning her head to the ground. An unidentified officer then got on his hands and knees on the ground in front of Plaintiff and unintentionally hit her on the lip with a can of mace while he told her to quit resisting or he would spray her. The evidence indicates that Officer Watson may have been involved in either or both of these two events. The amount of force used by the officers is disputed by the parties.

Plaintiff was prone on the ground for several minutes while the officers told her to quit resisting. Officer Ayes then picked her up and placed Plaintiff in the back of his police car without further incident. At that point Plaintiff took a portable breathalyzer test, which registered a blood alcohol level of either .162 or .167. After she took the test, Officer Ayres transported her to the Black Hawk Police station where she waited for paramedics to transport her to the hospital. Plaintiff was subsequently transported to a detoxification facility, where she spent the remainder of the night. Meanwhile, Officer Watson returned Mr. Bove to his hotel room. Neither Mr. Bove nor Plaintiff were charged with an offense.

The disputed issues of fact in this case relate to the propriety of Plaintiff's detention and whether the force used against Plaintiff by the officers was reasonable.  After the incident, Plaintiff complained about her treatment by the police.  An internal police investigation found minor policy violations, including a written reprimand to Officer Ayres for taunting, but the excessive force allegation was not confirmed.

## II. Plaintiff's Claims

In her complaint for damages, Plaintiff alleges a violation of 42 U.S.C. §1983 against Defendants for unlawful seizure and excessive use of force (First Cause of Action).   She makes a separate 42 U.S.C. §1983 claim against Defendant City of Black Hawk based on municipal and supervisory liability (Second Cause of Action).   She also asserts various state law claims for: Excessive Force by a Police Officer (Third Cause of Action); Assault and Battery (Fourth Cause of Action); Reckless Endangerment (Fifth Cause of Action); False Imprisonment (Sixth Cause of Action); and Common Law Negligence (Seventh Cause of Action).

## III.  42 U.S.C. § 1983 Claims

## A.  QUALIFIED IMMUNITY

Qualified immunity is a judicially created affirmative defense which protects state officials sued in their individual capacity for civil damages under 42 U.S.C. § 1983.  *See DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001). When government officials are performing discretionary functions, they will not be held liable for their conduct unless their actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642, 645 (10th Cir. 1988)(*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d

396 (1982)).  Whether a defendant is entitled to a qualified immunity defense is a question of law that should be resolved at the earliest possible stage in litigation.  *See Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).  Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation."  *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

Once a defendant pleads qualified immunity, the plaintiff bears a heavy two-part burden to show that qualified immunity does not exist.  *Albright v. Rodriguez*, 51 F.3d 1531, 1534 -1535 (10th Cir. 1995)(the "*Albright* test").  The initial inquiry is whether the defendant's conduct violated a constitutional right.  At the summary judgment stage, the court considers whether the evidence, viewed in the light most favorable to the party asserting the injury, shows that the alleged wrong-doer violated a constitutional right.  *See Saucier v. Katz, supra*, 533 U.S. at 201.  If, under this standard, no constitutional violation occurred, then the officials have qualified immunity from suit and should be dismissed from the action.  *Id.*

If a constitutional violation can be said to have occurred, then the qualified immunity inquiry proceeds to the second step, which is to determine whether the right that was violated was "clearly established" at the time of the violation.  This question is answered by deciding "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Id.* at 195-96.  If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate.  *Id.* at 202.  As a result, "[i]f the law supporting the allegedly violated rights was not clearly established, then immunity must lie."  *Schnurr v. Board of County Com'rs of Jefferson County*, 189 F.Supp.2d 1105, 1120 (D.Colo. 2001)(citations omitted).

If the plaintiff succeeds in carrying her two prong burden under the *Albright* test, the

burden shifts to the defendant to prove that there are no genuine issues of material fact and that

he is entitled to judgment as a matter of law.  *Albright v. Rodriguez*, *supra*, 51 F.3d at 535 (*citing*

*Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 778 (10th Cir.  1993)).

## B.  DEFENDANT OFFICER AYRES

Defendant Officer Ayres seeks partial summary judgment in his favor on Plaintiff's

unlawful seizure claim, but not the excessive force claim, pursuant to 42 U.S.C. §1983 on the

basis that he is protected by the doctrine of qualified immunity.

Officer Ayres first asserts that he is entitled to qualified immunity because Plaintiff

cannot meet her burden of establishing a constitutional violation for unlawful seizure under the

first prong of the *Albright* test.  In the context of an unlawful seizure claim, to demonstrate that a

defendant's actions violated the Fourth Amendment a plaintiff must show that the police officer

did not have probable cause to make the seizure.   A seizure is reasonable where there is probable

cause to believe, under an objective standard, that an offense has been or is being committed.

*See Henry v. United States,* 361 U.S. 98, 102, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); *U.S. v. Davis,*

197 F.3d 1048, 1051 (10th Cir. 1999).  The Supreme Court has described the probable cause

inquiry as a "commonsense, practical question" to be informed by the totality of the

circumstances present in any particular case.  *Illinois v. Gates,* 462 U.S. 213, 230, 103 S.Ct.

2317, 76 L.Ed.2d 527 (1983); *see also U.S. v. Mathis,* 357 F.3d 1200, 1204 (10th Cir. 2004).

Under Colorado law, an officer may arrest a person when "[h]e has probable cause to believe

that an offense was committed and has probable cause to believe that the offense was committed

by the person to be arrested."  C.R.S. § 16-3-102(1)(c).

It is contested as to whether Officer Ayres arrested Plaintiff for "gambling while intoxicated" pursuant to a Colorado Limited Gaming Regulation, or whether he took her into protective custody due to her intoxication pursuant to the Colorado Protective Custody Statute. Officer Ayres argues that he is entitled to qualified immunity under either theory.

**Gambling While Intoxicated**

Officer Ayres first maintains that he is entitled to qualified immunity because Plaintiff cannot establish a constitutional violation in that he had probable cause to arrest her for the misdemeanor crime of "gambling while intoxicated."  Plaintiff argues, in response, that there is no crime for "gambling while being intoxicated" in Colorado and, as a result, Ayres could not have had probable cause to arrest her on that charge.

Regardless of whether "gambling while intoxicated" is a crime, the evidence when viewed in Plaintiff's favor is sufficient to create an factual issue for the jury as to whether Officer Ayres had probable cause to make the seizure.  Plaintiff contends that the police officers had no knowledge at the time of her arrest that *she* was gambling because they were only provided information from casino management pertaining to Mr. Bove's activities.  Likewise, she contends that the officers did not have any reasonable information to assess her level of intoxication.  As discussed below, the evidence of probable cause as to whether Plaintiff was intoxicated at the time of her arrest is hotly contested by the parties and is an issue of fact for the jury.  When the evidence is viewed in the light most favorable to Plaintiff at this summary judgment stage of assessing qualified immunity, she has established genuine issues of material fact as to whether Officer Ayres' conduct in arresting Plaintiff for gambling while intoxicated violated her constitutional right against illegal seizure.

Because Plaintiff has met the first prong to defeat Officer Ayres' defense of qualified immunity, I next determine whether she has met the second prong of the *Albright* test; specifically whether the right violated was "clearly established" at the time of the violation so that a reasonable officer in Officer Ayres' situation would have understood that his conduct violated that right. "If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation." *Brosseau v. Haugen*, ___ U.S. ___, 125 S.Ct. 596, 599, 160 L.Ed.2d 583 (2004). The law is clearly established when there is a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts is as the plaintiff maintains. *Farmer v. Perrill*, 288 F.3d 1254, 1259 (10th Cir. 2002).

Colorado Limited Gaming Regulation § 47.1-415 provides as follows:

    (1) No licensee shall permit:

        (a) Persons who are visibly intoxicated to participate in gaming activity; or

        (b) Service of alcoholic beverages in the licensed premises to persons who are visibly intoxicated.

    (2) <u>No person shall participate in a limited gaming activity when such person is intoxicated</u>. [Emphasis added.]

Colorado Revised Statute § 12-47.1-832 further provides that "[a]ny person violating any of the provisions of this article, or any of the rules and regulations promulgated pursuant thereto, commits a class 1 misdemeanor."

Plaintiff argues that the regulation prohibiting persons from gambling while they are intoxicated does not create criminal liability, but rather is designed to minimize the extent to which gaming establishments might take advantage of intoxicated patrons. As such, its purpose

is for "civil" enforcement by the Colorado Gaming Commission against its licensees, and "pertains solely to whether or not a Gaming Commission Licensee may allow persons to participate in gaming activities when such person is intoxicated."  Furthermore, Plaintiff argues that because the regulation does not define what constitutes a criminal level of intoxication, it is unconstitutionally vague and cannot be enforceable as a penal crime.  This is a question of law.

Although it is clear that subsection 1 of the regulation pertains to the actions of a gaming establishment in allowing its patrons to gamble while intoxicated, it is not clear whether subsection 2, in conjunction with C.R.S. § 12-47.1-832, was intended to criminalize such behavior by gambling patrons.  *See also* C.R.S. § 12-47.1-204(4) ("[n]othing in this section shall be construed to prohibit local . . . police departments . . .  from enforcing the provisions of this article, and the rules and regulations promulgated pursuant to this article . . .").  Neither party has referred me to any case law that interprets or addresses the issue.  Thus, the underlying law supporting the well established Fourth Amendment right against illegal seizure was not "clearly established" at the time of the violation in that it could not have been "clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *See Saucier v. Katz, supra*, 533 U.S. at 195-96; *Albright v. Rodriguez, supra*, 51 F.3d at 1537; *Schnurr v. Board of County Com'rs of Jefferson County, supra,* 189 F.Supp.2d at 1120.  As such, Plaintiff has not met her burden under the second prong for defeating Officer Ayres' defense of qualified immunity to her §1983 claim of illegal seizure as it related to her arrest for "gambling while intoxicated."        Therefore, because Plaintiff has not met the second prong of the *Albright* test, Defendant Officer Ayres is entitled to qualified immunity as to Plaintiff's §1983 claim for illegal seizure as it is related to "gambling while intoxicated."

**Protective Custody**

Officer Ayres also asserts that he is entitled to qualified immunity to Plaintiff's claim of unlawful seizure because she cannot establish a constitutional violation in that he had probable cause to place her in protective custody under Colorado law.  The Colorado protective custody statute, C.R.S. § 25-1-310(1), provides that:

> When any person is <u>intoxicated or incapacitated by alcohol and clearly dangerous to the health and safety of himself or others</u>, such person shall be taken into protective custody by law enforcement authorities or an emergency service patrol, acting with probable cause, and placed in an approved treatment facility. . . . Law enforcement or emergency service personnel who act in compliance with this section are acting in the course of their official duties and are not criminally or civilly liable therefor. Nothing in this subsection (1) shall preclude an intoxicated or incapacitated person who is not dangerous to the health and safety of himself or others from being assisted to his home or like location by the law enforcement officer. [Emphasis added].

Officer Ayres argues that he determined probable cause to place Plaintiff in custody under this statute based on the following facts: 1) at the time Mr. Bove was taken into custody, Plaintiff stated, "You have got to be kidding me;" 2) she then told Ayres that "If you are going to take him, you need to take me too;" 3)  Ayres smelled a strong order of alcohol on Plaintiff's breath; 4) she slurred her speech and ran her words while speaking with him in the casino; 5) in his opinion she was "visibly intoxicated;" 6) she requested to be taken into custody, and put her own hands behind her back for handcuffing, which Ayres interpreted as not being able to take care of herself; and 7) she inappropriately inserted herself into the situation.  I do not consider the undisputed facts related to Plaintiff's intoxication that were unknown to Officer Ayres at the time he took Plaintiff into custody.  *Devenpeck v. Alford*, ___ U.S. ___, 125 S.Ct. 588, 593, 160 L.Ed. 2d 537 (2004)("[w]hether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest").

However, I disagree with Officer Ayres' assertion that the facts result in a reasonable probable cause conclusion that Plaintiff was "clearly dangerous to the health and safety of [her]self or others" as required by C.R.S. § 25-1-310(1).  *See Anaya v. Crossroads Managed Care Systems, Inc.*, 195 F.3d 584, 591 (10th Cir. 1999).  While these facts may be a reasonable probable cause assessment of intoxication, when viewed in favor of Plaintiff they do not amount to an objective determination that Plaintiff was clearly dangerous to the health and safety of herself or others.  For the same reason, I likewise reject Officer Ayres' assertion that he is entitled to immunity because any mistake he made in assessing probable cause was reasonable under the circumstances.  *See Saucier v. Katz, supra,* 533 U.S. at 204; *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995)(the arresting officer is entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest).

Because it can be said that a constitutional violation occurred, I next determine whether the right violated was "clearly established" pursuant to the second prong of the *Albright* test. Officer Ayres asserts that Plaintiff cannot defeat his qualified immunity defense because she cannot establish the second prong of her burden – that the law was "clearly established" such that Ayres should have know that he was unlawfully seizing her.  But the law regarding seizure under Colorado's protective custody statute was clearly established at the time of the incident here.  The statute specifically requires that a person may only be taken into custody when he or she is "clearly dangerous to the health and safety of himself or others."  C.R.S. § 25-1-310(1); *see also Anaya v. Crossroads Managed Care*, *supra*, 195 F.3d at 591 ("to justify seizure for intoxication by alcohol, an officer must have probable cause to believe an intoxicated person is a danger to himself or others").  I reject Officer Ayres' unsupported assertion that the weight of the legal

authority established that he acted with probable cause when he took Plaintiff into protective

custody under these facts pursuant to C.R.S. §25-1-310(1).

Because Plaintiff has met both prongs of the *Albright* test, the burden shifts to Officer

Ayres to prove that there are no genuine issues of material fact. *Albright v. Rodriguez*, *supra*, 51

F.3d at 535. As discussed above, Officer Ayres has failed to demonstrate that there are no

genuine issues of material fact or that the facts, when viewed in favor of Plaintiff, result in a

conclusion of probable cause entitling him to judgment. Therefore, I conclude that Officer

Ayres is not entitled to qualified immunity as to Plaintiff's §1983 claim for illegal seizure

pursuant to the Colorado protective custody statute.

## C.  DEFENDANT OFFICER WATSON

**Unlawful Seizure Claim**

Defendant Officer Watson first asserts that he is entitled to qualified immunity as to

Plaintiff's §1983 claim against him for unlawful seizure.   The question here is whether there is a

genuine issue of fact that Officer Watson participated in Plaintiff's seizure.  I conclude there is.

Although it is undisputed that Officer Watson took Mr. Bove into custody, and that

Officer Ayres seized Plaintiff, when the evidence is viewed in Plaintiff's favor, a jury could find

that Watson participated in the decision to take Plaintiff into custody.  Officer Watson was the

senior officer on the scene with Officer Ayres and, at the very least, he witnessed Plaintiff's

seizure.  Additionally, Plaintiff has advanced evidence that could support a conclusion that

because Officer Watson was aware of the alleged unlawful seizure by Ayres, he had an

obligation to intervene to stop the constitutional violation.  The case law regarding liability for

failure to intervene generally pertains to a fellow officer's use of illegal excessive force.  *See*

*Mick v.*

*Brewer,* 76 F.3d 1127, 1129 (10th Cir. 1996); *Byrd v. Brishke,* 466 F.2d 6, 11 (7th Cir.1972).

Nonetheless, the same rational applies to §1983 liability for failure to intervene when a citizen

has been unjustifiably seized.  *See e.g.*, *Anderson v. Branen*, 17 F.3d 552, 557 (2nd Cir. 1994).

Whether or not there was a "realistic opportunity to intervene to prevent the harm from

occurring" in order for liability to attach, is a factual determination to be made by the jury.  *Id.*

The evidence, although slim, is sufficient when viewed in the light most favorable to

Plaintiff for a jury to conclude that Officer Watson's conduct here violated Plaintiff's Fourth

Amendment right against unlawful seizure.  Because a constitutional violation can be said to

have occurred, Plaintiff has met her burden under the first prong to defeat Officer Watson's

qualified immunity defense.

As set forth above with regard to Officer Ayres' liability under §1983 for illegal arrest,

Plaintiff has not overcome the qualified immunity defense and Officer Watson is entitled to

dismissal because she cannot met the second prong of the *Albright* test.  However, under the

Colorado protective custody statute, Officer Watson is not entitled to dismissal based on

qualified immunity because Plaintiff has met her burden on both prongs of the *Albright* test and

Watson has not met his burden to show that there are no genuine issues of material fact

warranting judgment as a matter of law.

**Excessive Force Claim**

Officer Watson also asserts that he is entitled to qualified immunity related to Plaintiff's

§1983 claim against him for excessive force.  To establish a constitutional violation for

excessive force, under the first prong of Plaintiff's burden to defeat qualified immunity, she must

demonstrate that the level of force used by the individual officers was not objectively reasonable

in light of the facts and circumstances confronting them. *Saucier v. Katz, supra,* 533 U.S. at

205; *Graham v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

Evaluating the reasonableness of the force used by the officers "requires a careful balancing of

the nature and quality of the intrusion on the individual's Fourth Amendment interests against

the countervailing governmental interests at stake." *Id.* at 396. The totality of the specific facts

and circumstances of the case must be considered, including such relevant factors as the severity

of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers

or others, and whether the plaintiff was actively resisting arrest or attempting to evade arrest by

flight. *Saucier v. Katz, supra,* 533 U.S. at 205.

Officer Watson argues that Plaintiff cannot demonstrate that the level of force used by

him was not objectively reasonable in light of the facts and circumstances in order to establish a

constitutional violation.  In response, Plaintiff contends that although Officer Ayres was the

primary actor in the alleged use of excessive force against her, there is at least circumstantial

evidence that Watson: 1) participated by either holding her head to the ground by placing his

knee across her jawline, or threatening her with a can of mace; and/or 2) he should have stepped

in to prevent the assault.

As Officer Ayres took Plaintiff to the ground at his police car, Officer Watson could

observe the situation from a car length away while he was putting Mr. Bove into his car.

Although Plaintiff was unable to identify the extent of Officer Watson's involvement after that

point, Watson's police report regarding the incident indicates that he held Plaintiff down with his

knee and threatened to spray her with mace.  A witness to the incident indicated that she "saw

the handcuffed woman lying face down on the ground with one officer's knee in her back and

the other officer's hand on the back of her head."  The acts of force alleged by Plaintiff, when the evidence is viewed in the light most favorable to her, could result in a finding that Officer Watson actions were constitutionally excessive under the circumstances here.

Furthermore, it is not clear what Officer Watson observed regarding the alleged assault by Officer Ayres and failing to intervene.  *See Mick v. Brewer*, *supra*, 76 F.3d at 1136; *Hays v. Ellis*, 331 F.Supp.2d 1303, 1307 (D.Colo. 2004)("[a]n officer's failure to intervene in an excessive use of force by another officer also violates the aggrieved party's Fourth Amendment rights if the stand-by officer had a realistic opportunity to prevent the harm from occurring.")  The extent of Officer Watson's use of force is disputed and whether he had sufficient time to intercede or was capable of preventing the harm being caused by another officer are issues of fact for the jury.  *Id.*

Therefore, when the facts are viewed in the light most favorable to Plaintiff, I conclude that Plaintiff has met the first prong of her burden against Officer Watson's qualified immunity defense in that her constitutional right against excessive force may have been violated by his participation in or for failure to intervene in the alleged excessive assault by Officer Ayres.

Neither party disputes that Plaintiff has met her burden regarding the second step to defeat Officer Watson's qualified immunity defense regarding her claim of excessive force.  As with Officer Ayres, the law, as discussed above, clearly put Officer Watson on notice that his conduct as alleged by Plaintiff would be unlawful.  As a result, her §1983 claim for excessive force against Officer Watson is not precluded by a qualified immunity defense, as Plaintiff has met her burden related to both prongs of the *Albright* test.

Hence, Officer Watson has failed to establish that there are no genuine issues of material fact related to Plaintiff's claim against him related to Plaintiff's claim of excessive

force.   As I have discussed, the facts are unclear and hotly disputed as to his conduct and level

of knowledge regarding Officer Ayres' alleged force against Plaintiff and whether he had a

realistic opportunity to intervene, as well as the amount and necessity of the force he himself

utilized against her to continue the alleged assault.   Therefore, I conclude that Defendant Officer

Watson is not entitled to qualified immunity as to Plaintiff's §1983 claim for excessive force.

## D. DEFENDANT CITY OF BLACK HAWK

Finally, the City of Black Hawk asserts that it is entitled to summary judgment as a

matter of law on Plaintiff's §1983 claim against it for unlawful municipal custom or policies

consisting of:  improper training and supervision of its police officers pertaining to force; seizing

casino patrons without probable cause; and providing special privileges to casinos for use of

excessive force against its patrons.  I agree.

Fed. R. Civ. P. 56(c) provides that summary judgment shall be granted if the pleadings,

depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine

issue of material fact and the moving party is entitled to judgment as a matter of law.   The non-

moving party has the burden of showing that there are genuine issues of material fact to be

determined.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265

(1986).  A party seeking summary judgment bears the initial responsibility of informing the

district court of the basis for its motion, and identifying those portions of the pleadings,

depositions, interrogatories, and admissions on file together with affidavits, if any, which it

believes demonstrate the absence of genuine issues for trial.  *Id.* at 323;  *Mares v. ConAgra*

*Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir. 1992).  Once a properly supported summary

judgment motion is made, the opposing party may not rest on the allegations contained in his

complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. U.S.*, 622 F.2d 516, 519 (10th Cir. 1980); Fed. R. Civ. P. 56(e).

A local government may not be sued under §1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom inflicts the injury that the government as an entity is responsible under §1983. *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 694-695, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Therefore, in order to sustain a municipal liability claim for §1983 violations, the plaintiff must show: (1) the existence of a municipal custom or policy; and (2) a direct causal link between the custom or policy and the violation alleged. *Anaya v. Crossroads Managed Care*, *supra,* 195 F.3d at 592 (*quoting Hollingsworth v. Hill,* 110 F.3d 733, 742 (10th Cir.1997)).

In her response to the summary judgment motion, Plaintiff argued only that "it is clear that the officers' practice is to make arrests under the emergency commitment statute of Casino patrons who have been drinking" without probable cause to believe that the person is dangerous to the health and safety of himself or others. In her briefing, Plaintiff pointed to no evidence that would sustain such alleged municipal custom or policy. At the hearing, Plaintiff's counsel argued that an unrelated incident, caught on a videotape from Officer Ayres' police vehicle, in which two Black Hawk police officers apparently take two men into custody under the protective statute shows a continued pattern or policy of taking intoxicated patrons into custody without probable cause. Initially, I note that this evidence was not argued in the summary judgment briefing. Nonetheless, my view of the relevant portion of the videotape reveals that it is inadequate to support such an argument. The video shows neither the encounter prior to the

time that the men were taken into custody during which a probable cause assessment would have been made, nor the facts and circumstances surrounding that seizure.

As such, Plaintiff's primary allegation in support of her claim is the officers' conduct in the incident at issue in this case. Such evidence, standing along, cannot support an allegation of municipal custom and policy. *See Butler v. City of Norman,* 992 F.2d 1053, 1055-56 (10th Cir. 1993)("[p]roof of a single incident of unconstitutional activity is not sufficient to impose [municipal] liability . . . unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker"). *See also McClelland v. Facteau,* 610 F.2d 693, 696 (10th Cir.1979)(holding that an isolated incident of deprivation of constitutional rights by the police is not alone sufficient to raise an issue of fact as to whether training was inadequate). *Compare Anaya v. Crossroads Managed Care*, *supra*, 195 F.3d at 591 (where numerous allegations of protective custody arrests without the requisite probable cause were made, allegedly to provide enough business to keep a local detoxification facility in business). There is likewise insufficient evidence or even related argument to support Plaintiff's contention that the City of Black Hawk did not provide its police force with adequate training or supervision, or that it provided special privileges to casinos in the form of excessive force against its intoxicated patrons.

I conclude that Defendant City of Black Hawk is entitled to summary judgment in its favor on Plaintiff's §1983 claims.

## IV. Remaining Claims Based on State Law

**A. CLAIMS BASED IN CRIMINAL LAW/TORT**

Defendants first assert that Plaintiff's state law claims, except for her common law

negligence claim, are not sustainable as a matter of law because they seek a civil remedy for

violation of criminal statutes.  They specifically refer to Plaintiff's:  Third Claim for Relief for

excessive force in violation of C.R.S. §18-8-803; Fourth Claim for Relief for assault and battery

in violation of C.R.S. §§18-3-202 through -204; Fifth Claim for Relief for reckless

endangerment violation of C.R.S. §18-3-208; and Sixth Claim for Relief for false imprisonment

in violation of C.R.S. §18-3-303.  Because the criminal statues relied upon by Plaintiff do not

provide for a private cause of action under Colorado law, Defendants assert that these claims for

relief should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon

which relief can be granted.  *See also* C.R.C.P. 12(b)(5).   Defendants rely on Colorado case law

that limits criminal statutes to criminal penalties.  *See e.g. Silverstein v. Sisters of Charity of*

*Leavenworth Health Services Corp.*, 559 P.2d 716, 718 (Colo. App. 1976)("[w]here a statute

creates legal duties and provides a particular means for their enforcement, the designated remedy

excludes all others").

In response, Plaintiff argues that her state-based causes of action are for intentional torts.

Specifically, she asserts that "it should be readily apparent that Plaintiff is not relying solely on

Colorado criminal statutes to support her state law claims" but rather her claims are for "garden

variety torts actionable under Colorado law."

Although it is certainly not clear from Plaintiff's complaint that her state law claims are

for intentional torts as opposed to the criminal laws she prominently cites, the parties' Final

Pretrial Order, filed on March 30, 2005, indicates that "[s]tate law claims of excessive force by a

police officer, assault and battery, reckless endangerment, [and] false imprisonment . . . are

alleged as well."  The order does not define or limit Plaintiff's claims by the criminal statutes she

cited in her complaint.  Thus, to the extent that Plaintiff has adequately alleged the elements of

her claims based in tort, I conclude that her claims are not subject to dismissal under Fed. R. Civ.

P. 12(b)(6).  *See* Fed. R. Civ. P. 16(e) (the final pretrial order "shall control the subsequent

course of the action").

## B. COLORADO GOVERNMENTAL IMMUNITY

Alternatively, Defendants assert that all of Plaintiff's state law tort claims – addressed

above as well as Plaintiff's Seventh Claim for relief for common law negligence – are barred by

the Colorado Governmental Immunity Act, C.R.S. §§ 24-10-101, *et seq.* (the "CGIA") and, thus,

they should be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P.

12(b)(1). *See also* C.R.C.P. 12(b)(1).  A Rule 12(b)(1) motion to dismiss on grounds of

immunity under the CGIA raises a jurisdictional issue; the plaintiff has the burden of

demonstrating jurisdiction.  *See Padilla ex rel. Padilla v. School Dist. No. 1 in City and County

of Denver*, 25

P.3d 1176, 1180 (Colo. 2001).

Under the CGIA, "[a] public entity shall be immune from liability in all claims for injury

which lie in tort or could lie in tort" except in several enumerated circumstances.  C.R.S. §24-10-

106(1).  For example, such sovereign immunity is waived for a "dangerous condition of any

public building."  C.R.S. §24-10-106(1)(c).  However, Plaintiff has failed to plead a factual basis

for any of the enumerated exceptions and, thus, the City of Black Hawk is immune from

liability. *See e.g. Valdez v. City and County of Denver*, 764 P.2d 393, 395 (Colo. App.

1988)(finding that

neither the acts of the officers nor the City fell within the exceptions to immunity in the CGIA in

an action against police officers for false arrest, false imprisonment, and assault and battery, and

city for negligent hiring, retention, training, and supervision of officers).  Plaintiff did not argue

the applicability of the CGIA to her tort claims as they relate to the City of Black Hawk in either

her briefing or oral argument. Plaintiff has failed to met her burden of demonstrating jurisdiction

under the CGIA pursuant to Rule 12(b)(1).   I will dismiss her state law tort claims against the

City of Black Hawk.

        Plaintiff contends, however, that her claims against the individual Defendants survive

dismissal under Rule 12(b)(1) because she has alleged facts that support that their actions were

wilful and wanton, which excepts these tort claims from immunity under the CGIA.  The CGIA

provides immunity for a public employee for any claim for injury which lies in tort or could lie

in tort, "unless the act or omission causing injury was willful and wanton."  C.R.S. §24-10-

118(2)(a).  The majority of Colorado courts apply  the "willful and wanton" definition contained

in Colorado's exemplary damages statute, C.R.S. §3-21- 102(1)(b), which provides that willful

and wanton conduct is "conduct purposefully committed which the actor must have realized as

dangerous, done heedlessly and recklessly, without regard to the consequences, or the rights and

safety of others, particularly the plaintiff."  *See O'Hayre v. Board of Educ. for Jefferson County*

*School Dist. R-1,* 109 F.Supp.2d 1284, 1295 (D.Colo. 2000).  Under this definition, Plaintiff has

alleged facts constituting wilful and wanton acts by Officer Ayres and Officer Watson.

        Therefore, because Plaintiff has failed plead a factual basis for a waiver of its sovereign

immunity under the CGIA, I dismiss her state law tort claims against the City of Black Hawk

pursuant to Rule 12(b)(1) for failure to state a claim upon which relief can be granted.  However,

because Plaintiff has averred facts that would support a finding of wilful and wanton acts by Officers Ayres and Watson, her state law tort claims against them survive dismissal.

ACCORDINGLY, for the foregoing reasons, I GRANT IN PART and DENY IN PART Defendant Samuel L. Ayres' Motion for Partial Summary Judgment [# 152]; and Defendants City of Black Hawk and Scott A. Watson's Combined Motion for Summary Judgment and Motion to Dismiss [# 151], and ORDER as follows:

1) Defendant Officer Ayres' motion for partial summary judgment on Plaintiff's § 1983 unlawful seizure claim asserted in her First Cause of Action is: GRANTED as it relates to her claim of illegal arrest for "gambling while intoxicated;" and DENIED as it relates to Plaintiff's seizure pursuant to the Colorado protective custody statute;

2) Defendant Officer Watson's motion for summary judgment on Plaintiff's § 1983 unlawful seizure claim asserted in her First Cause of Action is likewise: GRANTED as it relates to her claim of illegal arrest for "gambling while intoxicated;" and DENIED as it relates to Plaintiff's seizure pursuant to the Colorado protective custody statute;

3) Defendant Officer Watson's motion for summary judgment on Plaintiff's excessive force claim is DENIED;

4) Defendant City of Black Hawk's motion for summary judgment is GRANTED and Plaintiff's Second Cause of Action pursuant to 42 U.S.C. §1983 for municipal and supervisory liability against Defendant City of Black Hawk is DISMISSED;

5) Defendant City of Black Hawk's motion to dismiss is GRANTED and Plaintiff's Third, Fourth, Fifth, Sixth and Seventh Causes of Action are DISMISSED against Defendant City of Black Hawk;

6) As a result, Defendant City of Black Hawk is DISMISSED from this action;

7) Defendant City of Black Hawk is AWARDED its costs; and

8) Defendants Officers Ayres' and Watsons' respective motions to dismiss or for summary judgment on Plaintiff's Third, Fourth, Fifth, Sixth and Seventh Causes of Action are DENIED.

Dated: July ___18___, 2005, in Denver, Colorado.

BY THE COURT:


___s/Lewis T. Babcock_____
LEWIS T. BABCOCK, CHIEF JUDGE